UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LULA GILCHRIST
    Plaintiff,

v.

STATE FARM MUTUAL
INSURANCE CO.,
    Defendant.

Case No. 06-11659
Judge Avern Cohn

_____/

### MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING POINTE NEUROLOGY EXPENSES AND EXTRA-CONTRACTUAL CLAIMS

**I. Introduction**

This is a personal injury case under the Michigan No-Fault Insurance Act, M.C.L. 500.3101 et seq. Plaintiff Lula Gilchrist (Gilchrist) is suing State Farm Mutual Automobile Insurance Company (State Farm) for benefits under a no-fault automobile insurance policy. Gilchrist sustained bodily injuries in a car accident on April 17, 2003. Gilchrist says that State Farm has failed to pay her attendant care benefits. She also says that State Farm has failed to pay her wage loss benefits, medical benefits, mileage, prescriptions, and loss of service benefits since February 1, 2006. Gilchrist further says that she is entitled to damages for the intentional infliction of emotional distress (IIED); and entitled to compensatory and/or punitive damages for the wilful and wrongful withholding of benefits.

Gilchrist seeks accrued benefits, damages related to her IIED claim, additional compensatory and/or punitive damages, costs, interest, and attorney's fees.

1

State Farm moves for partial summary judgment. State Farm says that Gilchrist's claim for medical benefits relates to treatment she received at Pointe Neurology P.C. (Pointe Neurology). State Farm says that Pointe Neurology has already sued for medical benefits and therefore Gilchrist's claim is barred by the doctrine of res judicata. State Farm also says that Gilchrist is barred from seeking extra-contractual compensatory damages, punitive damages, or damages on her IIED claim because all these claims are related to her claim for benefits.

For the following reasons, State Farm's motion will be denied in part and granted in part.

## II. Background [1]

### A.

Gilchrist was in a car accident on April 17, 2003. She says that she sustained the following injuries: bilateral Carpal Tunnel Syndrome; bilateral C5-6 Radiculopathy; bilateral L5-S1 Radiculopathy; Herniated Disc C5-C6; Herniated Disc L5-S1. For some time after the accident, Gilchrist's daughters cared for her by cooking and cleaning, and also taking care of her health needs. Gilchrist says that her treating physicians disabled her from work and gave her a certificate for attendant care and household care.[2] It appears that State Farm did pay Gilchrist some benefits, such as wage loss benefits, beginning in June 2003, but that her request for benefits was denied

---

[1] The parties did not follow the Court's Motion Practice Guidelines (Guidelines). State Farm did not file a Statement of Material Facts Not in Dispute. Gilchrist did not file a Counter-Statement of Disputed Facts. For a copy of the Guidelines, see http://www.mied.uscourts.gov/_practices/Cohn/motion.htm.

[2] It is unclear who Gilchrist's treating physicians are.

2

after February 1, 2006.  The record does not show why State Farm stopped paying Gilchrist benefits.  However, at her deposition, Gilchrist says that she was denied further benefits shortly after she saw a State Farm physician.

At some point, Gilchrist was treated by Dr. Policherla[3], a neurologist employed by Pointe Neurology.  Gilchrist says that she currently has an outstanding medical bill with Pointe Neurology for $24,750.43.[4]

Plaintiff filed this case on March 1, 2006.

### B.

On July 5, 2005 Pointe Neurology filed suit against 3 insurance companies, including State Farm, in Wayne County Circuit Court.  With respect to State Farm, Pointe Neurology sought payment of bills related to the treatment of 28 patients who were treated for car-accident related injuries and had policies with State Farm.  Pointe Neurology sought a total of $7,976.56 for all patients.  Pointe Neurology sought $ 511.40 for treating Gilchrist. The record does not show the date(s) or extent of treatment the bills refers to.

According to State Farm, Pointe Neurology failed to comply with certain court orders concerning discovery, and State Farm moved for sanctions.  Shortly thereafter, Pointe Neurology agreed to stipulate to dismiss with prejudice its claims against State

---

[3] Dr. Policherla's first name is not in the record.

[4] It is unclear on what dates Gilchrist saw Dr. Ponlicherla, or the extent of her treatment.

3

Farm. The dismissal was approved by the Wayne County Circuit Court on April 5, 2006.[5]

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir.

---

[5] Gilchrist says that State Farm overwhelmed Pointe Neurology with discovery requests and that Pointe Neurology dismissed State Farm from the case because the value of the claims was less than the cost to comply with discovery.

1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).

### IV. Analysis

#### A. Whether Gilchrist's Claim for Medical Benefits Relating to Treatment She Received at Pointe Nuerology is Barred

##### 1. The Standard for Res Judicata

A claim is barred by the res judicata effect of prior litigation where all of the following elements are present: (1) the prior action was decided on the merits; (2) the matter contested in the second case was or could have been resolved in the first case; and (3) both actions involve the same parties or their privies. See Baraga Co. v. State Tax Comm., Mich. 264, 269 (2002).

##### 2. Arguments

###### a.

State Farm says that Gilchrist's claim is barred by the res judicata effect of Pointe Neurology's prior dismissal. With regards to the first element, State Farm points out that a voluntary dismissal with prejudice constitutes a decision on the merits for purposes of application of res judicata. Limbach v. Oakland Co. Bd. of Co. Road Com'rs, 226 Mich App 389, 395 (1997). State Farm says that the first element is satisfied by Pointe

5

Neurology's stipulation to dismiss its case against State Farm on July 6, 2005.

State Farm says that the second element is also satisfied since all claims relative to any services Pointe Neurology provided to Gilchrist on or before April 5, 2006 "were or could have been litigated and resolved" in Pointe Neurology's July 2005 lawsuit against State Farm.

As to the third element, State Farm says that Gilchrist were in privity with Pointe Neurology.  One party is in privity with another when the second party is so identified in interest with the other that he or she represents the same legal right. See Phinisee v. Rogers, 229 Mich App 547, 551-552 (1998).  Privity between a party and non-party requires both a "substantial identity of interests" and a "working or functional relationship ... in which the interest of the non-party are presented and protected by the party in the litigation."  Sloan v. Madison Heights, 425 Mich. 288, 295-296 (1986).  State Farm says that Pointe Neurology and Gilchrist were in privity because Pointe Neurology's claim for payment was based on the same legal right as Gilchrist's to insurance benefits arising under the Michigan No-Fault Insurance Act and her policy with State Farm.

State Farm also relies on Accident Victims Home Health Care v. Allstate Insurance Co., 2006 WL 1540793 (Mich. App.), to show that Pointe Neurology and Gilchrist were in privity.  In Accident Victims a patient by the name of Bridget Gaither (Gaither) received medical services totaling approximately $40,000.00 from Accident Victims, a health care provider.  Gaither filed suit against Allstate Insurance Company (Allstate) when it refused to pay some of her medical bills under her no-fault policy. Gaither eventually settled with Allstate for $6,000.00.  Accident Victim's later sued Allstate claiming that it was entitled to Gaither's insurance benefits for the remainder of

the medical bills. The court of appeals disagreed, holding that Accident Victim's claim against Allstate to provide benefits was barred by Gaither's earlier settlement and release of Allstate from all claims by Accident Victims and other healthcare providers. The court of appeals held that "the interest of Gaither and Accident Victims are sufficiently similar so that the prior litigation afforded Accident Victims a forum to protect its rights under the no-fault act. Thus for purposes of [res judicata],Gaither and Accident Victims were in privity."

**b.**

Gilchrist argues that her claim is not barred by Pointe Neurology's 2005 case because that suit was only for "balance billing". Balance billing refers to when an insurance company pays only part of a specific medical bill under a patient's no-fault insurance policy. The difference between what the medical provider charges and what the insurer pays is referred to as the "balance bill." Gilchrist says that her claim should not be barred because her claim and Pointe Neurology's are distinct as Pointe Neurology did not seek the entire amount that Dr. Policherla was owed for medical services provided to Gilchrist. Instead, Pointe Neurology sought only the balance on a specific bill. Thus the only amount that could be barred is the specific claim to $511.40.[6]

Gilchrist also says that State Farm's reliance on <u>Accident Victims</u> is misplaced because the facts are distinguishable. In <u>Accident Victims</u> it appears that Gaither sued

---

[6] Gilchrist says that State Farm similarly argued that claim for balance billing by Pointe Neurology barred an insured's claim for medical benefits in a separate case; and that the 46th District Court rejected State Farm's arguments made in a partial motion for summary judgement. The order relating to that motion shows that the court did dismiss State Farm's motion for partial summary judgment, but says that it was doing so for the reasons stated on the record. The record has not been provided.

Allstate for all outstanding medical bills owed to Accident Victims. Thus, Accident Victim's claim against Allstate for Gaither's benefits was identical to Gaither's own claim against Allstate. Moreover, Gaither signed a release of all future claims for benefits by Accident Victims and her other medical providers. Here neither Gilchrist nor Pointe Neurology have signed a release.

### 3. Resolution

Gilchrist's claim is not barred by res judicata. Although Point Neurology's voluntary dismissal may act as an adjudication on the merits for the claims it made, and Pointe Neurology and Gilchrist appear to be in privity because their claims are dependent on Gilchrist's right to no-fault insurance benefits, it is not clear that Gilchrist's claim should have been or even could have been litigated in Pointe Neurology's suit. Pointe Neurology's suit for balance billing was brought against multiple insurance companies to collect benefits for dozens of patients. It is entirely unclear what medical services these bills relate to, or the date(s) on which they were provided to the patients. There is no evidence that, as the insured, Gilchrist had the right to intervene in the suit to sue for all of her medical bills. To the contrary, it appears that balance billing claims developed specifically as a means for medical providers to challenge insurance companies who refused to pay bills on the basis that the medial provider had charged an unreasonable price for services. McGill v. Automobile Ass'n of Michigan, 207 Mich. App. 402 (1994). Next, there is no evidence that Gilchrist had notice that Neurology Pointe had sued State Farm. This is different than the medical provider in Accident Victims, who had notice of Gaither's suit and had the opportunity to intervene. Finally, unlike in Accident Victims, there is no indication that either Gilchrist or Pointe Neurology agreed to

8

limit Gilchrist's ability to seek benefits through its claim for balance billing of a mere $511.40. No release was signed. Accordingly, State Farm's motion for summary judgment as to this claim is denied.

### B. Whether Gilchrist's IIED Claim is Barred

#### 1. The Standard

Under Michigan law, to state a claim for intentional infliction of emotional distress, Gilchrist must allege extreme or outrageous conduct which, intentionally or recklessly, causes extreme emotional distress. McCahill v. Commercial Ins. Co., 179 Mich. App. 761 (1989). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Doe v. Mills, 212 Mich.App. 73 [cite] (1995). Liability will not be found for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"; rather, the case must be one in which the facts would arouse the resentment of an average member of the community against the actor, leading him to exclaim, "Outrageous!" Id. (citing Roberts v. Auto-Owners Ins. Co., 422 Mich. 594 (1985)). It is initially for the Court to decide whether State Farm's conduct might reasonably be regarded as so extreme and outrageous as to allow recovery for intentional infliction of emotional distress. Doe v. Mills, 212 Mich. App. 73 (1995).

#### 2. Arguments

State Farm says that it is a well-settled principle that in a breach of contract action, absent allegation and proof of tortious conduct existing independently of the

9

breach of contract, damages for emotional distress are not recoverable.  Kewin v. Massachusetts Mutual Life Ins. Co., 409 Mich. 401, 419-421 (1980) (additional citations omitted).  State Farm says that Gilchrist has failed to plead or prove tortious conduct independent of her breach of contract claim (i.e. her claim for insurance benefits).  State Farm says that the complaint sets forth no facts, other than the simple denial of certain portions of Gilchrist's claim for insurance benefits that would support a claim of intentional infliction of emotional distress.  State Farm also points out that in her deposition Gilchrist says that she is emotionally distressed because (1) she had been denied benefits which caused her financial stress; (2) she argued with one of State Farm's adjusters over the partial denial of her claim; and (3) because an adjuster said to her: "you better return to work."  State Farm argues that these events are not independent of Gilchrist's claim for insurance benefits.

State Farm also says that the events Gilchrist describes does not rise to extreme and outrageous conduct.  In Hayley v. Allstate Insurance Co., 262 Mich App. 571, 577 (1994) the Michigan Court of Appeals specifically held that even a bad faith failure to pay insurance benefits does not amount to outrageous conduct.

Gilchrist responds that she is entitled to collect for emotional distress because State Farm adjustors "deliberate[ly] torment[ed]" her by "blatantly refus[ing]" to send her attendant care forms although she asked for them repeatedly.  Gilchrist also says that State Farm "ordered" her to go back to work even through her treating doctors said she was disabled, and that she had to call and speak to an adjustor's supervisor about the denial of her claim.  Gilchrist says this behavior was vicious and disrespectful and rises to a level of extreme and outrageous conduct.

10

Gilchrist does not address State Farm's argument that her emotional distress claim should be barred because it is not independent of her breach of contract claim.

### 3. Resolution

Gilchrist has not made out a prima facie case of intentional infliction of emotional distress. First, Gilchrist has failed to show how her interaction with the adjustors –including arguing with an adjustor over the denial of benefits, and an adjustor's comment that she "better return to work" are extreme and outrageous. Moreover, they appear to be entirely related to her claim for benefits, which she is going forward with. Second, in her deposition, Gilchrist's specifically said that State Farm mailed her the attendant care forms and that she mailed them back to State Farm. See Gilchrist's deposition, page 30. Therefore, State Farm did not refuse to send her the forms. For the aforementioned reasons, Gilchrist's intentional infliction of emotional distress claim must be dismissed.

### C. Whether Gilchrist's Claim for Extra-Contractual Compensatory and/or Punitive Damages is Barred

### 1. Arguments

Gilchrist's complaint states that she seeks compensatory or punitive damages for the wilful and wrongful withholding of benefits. State Farm points out that in Jerome v. Michigan Auto Ins. Co, 100 Mich. App 685 (1981), the court of appeals specifically held that punitive damages or damages for mental and emotional distress may not be recovered from an insurer, even where the insurer has unreasonably or wrongfully delayed payment of benefits. The court of appeals relied on the general rule that damages for mental distress are not recoverable in breach of contract action, as set forth

11

in Kewin, supra.

Gilchrist sets forth the same arguments as she did for her claim of intentional infliction of emotional distress. She does not address State Farm's argument that Jerome bars her claim for compensatory or punitive damages.

## 2. Resolution

Gilchrist's claim must be dismissed. Her arguments claim for compensatory and/or punitive damages are not independent of her claim for benefits.

`

For the reasons stated above, State Farm's motion for summary judgment regarding Gilchrist's claim for benefits for medical services provided to her from Pointe Neurology is DENIED. State Farm's motion for summary judgment is GRANTED as to Gilchrist's claim of intentional infliction of emotional distress and her claim for compensatory and/or punitive damages.

**SO ORDERED**.

Date: February 8, 2007            s/Avern Cohn
                                          AVERN COHN
                                          UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, February 8, 2007, by electronic and/or ordinary mail.

                                            s/Julie Owens
                                            Case Manager, (313) 234-5160